UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ERVIN BERONCO SMITH, | Criminal Case No. 15-20394-3 |
| Defendant, | |
| | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| UNITED STATES OF AMERICA, | U.S. MAGISTRATE JUDGE |
| | R. STEVEN WHALEN |
| Plaintiff. | |

**ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE [220]**

On November 13, 2020, Ervin Smith filed a *pro se* Motion to Reduce Sentence [220] asking this Court for his immediate compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) from Federal Correctional Institute (FCI) Beckley due to the COVID-19 pandemic. On December 4, 2020, the Government filed a Response [221] in opposition. Smith filed a Supplemental Brief [226] on December 18, 2020. The Government filed a Supplemental Brief [228] on December 21, 2020. The Court held a hearing on the motion on December 23, 2020. For the reasons stated below, and on the record, the Court **GRANTS** Smith's Motion to Reduce Sentence [220].

**FACTUAL BACKGROUND**

a. Personal Information

Smith is the third of fourteen children born to his mother who died in 2006. (PSR ¶ 56). His mother worked occasionally, and his family was financially

supported by the Department of Social Services. (*Id.*). At age 10, Smith was placed in foster care for almost one year. (*Id.*). Afterwards, Smith and two of his siblings resided with his maternal grandmother while many of his siblings remained in foster care. (*Id.*). Smith has had sporadic contact with his father who now resides in Highland Park, Michigan. (*Id.*). He is close to his siblings, most of whom reside in Michigan. (*Id.* ¶ 57). Smith dropped out of high school after the tenth grade. (*Id.* ¶ 64). At age 17, he began experimenting with drugs and alcohol. (*Id.* ¶ 63).

Smith has five children ranging in ages from approximately seven to twenty. (*Id.* ¶ 58). His two oldest children are now in college. (ECF No. 226-6, PageID.1691). The rest live with their respective mothers in Redford, Detroit, and Jackson. (PSR ¶ 58). From 2006 up until his arrest, Smith was employed by Worldwide Truck Sales as a truck driver, yardman, and mechanic. (*Id.* ¶ 67). His employer wrote to the Court that there is a job waiting for Smith upon his release. (ECF No. 226-13, PageID. 1707).

      b. <u>Offense Conduct</u>

Smith was a courier in a drug trafficking organization in Detroit. (PSR ¶ 14). On June 13, 2015, FBI Agents attempted to effectuate a traffic stop of Smith after watching him participate in a suspected drug deal of one or two kilograms of heroin. (*Id.* ¶ 21). Smith did not pull over and lead the police in a chase while throwing heroin out of the window. (*Id.*). He was arrested later that day, found to be in

possession of almost one kilogram of heroin, and detained. (*Id.* ¶ 5, 22). On June 12, 2017, Smith pled guilty to Conspiracy to Distribute Controlled Substances, in violation of § 21 U.S.C. 841(b)(1)(B) and 846, and Possession With Intent to Distribute Heroin, in violation of § 21 U.S.C. 841(b)(1)(B) 841(a)(1). He was sentenced to 120 months of imprisonment on November 20, 2017. (ECF No. 192). Smith remained in detention through sentencing and has cumulatively spent five-and-one-half years incarcerated. (PSR ¶ 12).

      c. Prison Record

During his incarceration, Smith has not received any disciplinary citations. (ECF No. 227-6, PageID.1848). Despite this, the Bureau of Prison (BOP) has given him a "medium" PATTERN score rating for recidivism. (ECF No. 227-5, PageID.1846)[1]. According to the Probation Department, Smith has completed the Bureau of Prison's Residential Drug Abuse Program (RDAP), which makes him eligible for early release in June of 2022. Smith has also participated in a number of

---

[1] The Court notes that this assessment tool is not infallible. Several experts have cautioned that "a number of key assumptions and policy choices made in the design of [the PATTERN] tool [are] not verifiable or inadequately supported." Brandon L. Garrett & Megan Stevenson, Open Risk Assessment, 38 BEHAV. SCIS. & L. 279, 280 (2020); see also P'SHIP ON AI, ALGORITHMIC RISK ASSESSMENT AND COVID-19: WHY PATTERN SHOULD NOT BE USED 2 (2020), https://www.partnershiponai.org/wp-content/uploads/2020/04/Why-PATTERN-Should-Not-Be-Used.pdf [https://perma.cc/2LNP-QXM9] (explaining that "PATTERN was not developed with the intent of informing anything akin to COVID-era decisions, nor was it validated on data that reflects the present social and economic landscape"). Indeed, "due to both demographic differences between the Black and White federal inmate populations and racial bias in the data used to develop, validate, and score the tool, the . . . use of PATTERN is likely to contribute to significant unjustified racial disparities." *Id.*

reentry programs and courses such as employment skills, General Educational Development (GED), and personal budgeting. (ECF No. 227-4, PageID.1843).

### d. Medical Condition

Smith is 47 years old. (ECF No. 227-1, PageID.1803). His medical records indicate that at 5'6" and 271 pounds, he is obese with a BMI of 37. (*Id.* at 1711). He additionally suffers from type 2 diabetes, hypertension, and has a history of smoking. (*Id.*). Smith recently contracted COVID-19 while on lockdown with his cellmate. (*Id.* at 1803). He experienced mild symptoms but was largely asymptomatic. (*Id.* at 1773).

### e. Administrative Remedies

Smith submitted a written request to the warden of FCI Beckley on October 14, 2020 asking for compassionate release. (ECF No. 227-2). The warden denied the request on November 5, 2020. (ECF No. 227-3).

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582(c)(1).

I. <u>Exhaustion of Administrative Remedies</u>

Before a prisoner can move for compassionate release under 18 U.S.C. § 3582(c)(1)(A), "[t]hey must 'fully exhaust[ ] all administrative rights' or . . . wait for 30 days after the warden's 'receipt of [their] request.'" *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). Smith made a compassionate release request on October 14, 2020 and was denied on November 5, 2020. (ECF No. 227-2); (ECF No. 227-3). There is therefore no dispute that he has exhausted his administrative remedies.

II. <u>Extraordinary and Compelling Reasons for Release</u>

Under *United States v. Jones*, because Smith has properly exhausted his administrative remedies, the Court must proceed through the following three-step inquiry:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). . . . At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole

> or in part under the particular circumstances of the case." [*Dillon v. United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, No. 20-3701, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (first four alterations in original) (footnotes omitted). And where, as here, there is no "applicable" policy statement, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, No. 20-3654, 2021 U.S. App. LEXIS 251, at *6 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1111; *United States v. Ruffin*, 978 F.3d 1000, 1007 (2020)) ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative."). Here, the Court finds that the risk posed to Smith by his medical conditions and the spread of COVID-19 at FCI Beckley constitute extraordinary and compelling reasons for compassionate release.

Smith has type 2 diabetes, a BMI of 37, and a history of smoking. (ECF No. 227-1, PageID.1711, 1782). The Center for Disease Control and Prevention has recognized that all three of these conditions increase a person's risk of severe illness from COVID-19. *People with certain Medical Conditions,* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/NZH6-5RCL] (last visited January 24, 2021). In addition, the fact that Smith suffers from multiple conditions further exacerbates his risk of death or serious illness. *See* Wei-

jie Guan et al., *Comorbidity and its impact on 1590 patients with COVID-19 in China: a nationwide analysis,* 55 EUROPEAN RESPIRATORY J. (2020) (finding that "[a] greater number of comorbidities also correlated with poorer clinical outcomes.").

Furthermore, the Court has serious concern for Smith's health and safety in FCI Beckley. 293 inmates and staff at FCI Beckley have contracted and recovered from COVID-19, while eight currently have the virus. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/2MXS-TZRW] (last visited February 2, 2021). The prison currently houses 1,476 inmates and officials have completed tests for 683 inmates, less than half of the population. *FCI Beckley*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/bec/ [https://perma.cc/4EQD-GVD9] (last visited February 2, 2021); *COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/2MXS-TZRW] (last visited February 2, 2021). Although the vaccine is now available to BOP facilities, doses are first being offered to full time staff and only the remaining doses are provided to inmates based on priority of need. *COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/2MXS-TZRW] (last visited February 2, 2021).

Due to the virus' rapid spread through the prison, FCI Beckley has been on lockdown since November 2020. (ECF No. 226, PageID.1627). Smith spends all day in a six feet wide cell with his cellmate, with little to no access to sanitizing products. (*Id.*). Unsurprisingly, in such conditions, both Smith and his cellmate contracted COVID-19. (ECF No. 227-1, PageID.1803). Although he was largely asymptomatic, if re-infected, Smith is at risk of suffering from severe symptoms the second time around. (*Id.* at 1773); (ECF No. 226-3, PageID.1650 (a declaration of Dr. Tara Vijayan, an infectious disease physician)). Dr. Vijayan notes the following:

> Even if a person recovered from a first infection with the virus that does not mean that they will recover from a subsequent infection. An individual could survive a first infection and die from a subsequent infection. Likewise, people who had a mild or asymptomatic disease course the first time around very well may not have a mild or asymptomatic disease course with subsequent reinfection . . . Studies suggest that individuals who previously had severe cases have a stronger and longer-lasting immunity to SARS-CoV-2 infection than individuals who had a milder illness.

(*Id.* at 1652). Moreover, individuals "who are housed in prisons and jails are likely to be re-exposed to the virus because of the unique features of the environment, including congregate living and antiquated or poor ventilation, and because there is already widespread infection in these facilities." (*Id.* at 1652-53). Continuing to incarcerate Smith under such conditions while the virus runs rampant is a potentially deadly decision. *See* Beth Schwartzapfel et. al, *1 in 5 Prisoners in the US Has Had COVID-19, 1,700 Have Died*, AP News (Dec. 18, 2020),

https://apnews.com/article/pandemics-race-and-ethnicity-prisons-united-states-coronavirus-pandemic-0bef0673013aa579551db5ad61b885e0 (reporting that although one in every five state and federal prisoners have tested positive for the coronavirus, "[t]hat number is a vast undercount," and that many infected prisoners become sicker than they need to be due to inadequate care). Accordingly, the Court finds that the virus' risk to Smith's health in prison is an extraordinary and compelling reason for his release.

III. Section 3553(a) Factors

At the last step, the Court must consider whether any applicable 18 U.S.C. § 3553(a) factors warrant a sentence reduction. "[T]he deferential abuse-of-discretion standard requires district courts to supply specific factual reasons for their compassionate release decisions." *Jones*, 980 F.3d at 1101-02. However, "'as long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Id.* at 1114 (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)). The § 3553(a) factors are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
**(3)** the kinds of sentences available;
**(4)** the kinds of sentence and the sentencing range established for--
**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
[. . .]
**(5)** any pertinent policy statement—
[. . .]
**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553. Smith's crimes were serious, but the quality of his time in prison has shown that he has the educational and correctional tools to live a life apart from crime.

While in prison, Smith participated in over 600 hours of educational and rehabilitative programming, including: employment skills, culinary skills, commercial driving, and reentry. (ECF No. 227-4). Smith also finished the coursework to obtain his GED degree and completed BOP's Residential Drug Program, which studies show reduces relapse and recidivism amongst its participants. (*Id.*); *Substance Abuse Treatment*, Federal Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp [https://perma.cc/JCZ8-DJUT] (last visited February 5, 2021). Additionally, despite

the Government's concerns, the Court finds that due to his spotless disciplinary history, Smith has shown that he is willing and able to both stay out of trouble and follow state and local COVID-19 restrictions, especially in light of his vulnerable health condition. (ECF No. 227-6, PageID.1848).

The Court has received several letters from Smith's family, including his siblings and his two oldest children. (ECF No. 227-6); (ECF No. 227-7); (ECF No. 227-8); (ECF No. 227-9); (ECF No. 227-10); (ECF No. 227-11); (ECF No. 227-12). The letters indicate that Smith has taken responsibility for and learned from his mistakes, has "changed for the better" since entering prison, and is looking forward to maintaining employment and spending more time with his children upon his release. (*Id.*). Smith's family is ready and willing to help him with the transition.

In addition, several of Smith's co-defendants, including the leader and the supplier of the organization have already been released from their sentences. (ECF No. 218); *Find an inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results [https://perma.cc/9M6D-HWE8] (last visited February 5, 2021). Therefore, releasing Smith would avoid an unwarranted sentencing disparity. *See United States v. Alexander*, No. 1:04 CR 529, 2020 U.S. Dist. LEXIS 198264, at *10

(N.D. Ohio Oct. 26, 2020) (finding that sentence disparity indicates that the defendant has served "an adequate punishment for his crimes.").

Smith has also presented the Court with an appropriate reentry plan. Upon release, he plans to live in a family friend's home, which the probation department has determined is a suitable placement. In addition, Smith's prior employer writes to the Court that Smith "is a good worker," "hard to replace" and that he has a job waiting for him when he is released. (ECF No. 226-13, PageID.1707).

Finally, the minimal potential danger to the community that Smith poses is mitigated by the amount of time he has served and his family support. The Court's original sentence, while appropriate, was never intended to be a death sentence. The potential danger of Smith's medical conditions outweighs any marginal benefit he would receive from finishing his remaining one year and four months in prison in midst of a pandemic. Compassionate release is therefore in line with the § 3553(a) factors.

## Conclusion

**IT IS ORDERED** that Defendant's Motion to Reduce Sentence [220] is **GRANTED.**

**IT IS FURTHER ORDERED** that the BOP officials at FCI Beckley shall immediately release ERVIN BERONCO SMITH (303580-039).

**IT IS FURTHER ORDERED** that upon his release, Smith will begin his 96-month term of **SUPERVISED RELEASE**, as outlined by the November 21, 2017 Judgment. (ECF No. 192).

**SO ORDERED.**

Dated: February 9, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge